202 So.2d 173

**Ralph BOND**

v.

**STATE.**

**8 Div. 96.**

Court of Appeals of Alabama.

Aug. 29, 1967.

J. N. Powell, Jr., Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant was convicted of the offense of grand larceny, and his punishment fixed at imprisonment in the penitentiary for a term of two years.

The State's evidence tended to show the theft by defendant of a billfold belonging to Mrs. Mamie Payne, operator of the H & H Clothing Store in Decatur. The billfold contained a government check, five twenty dollar bills in a secret compartment, and between fifty and sixty dollars in another compartment. Defendant denied taking the billfold. The evidence presented by the state tended to establish all the elements of the corpus delicti. Mooneyham v. State, 28 Ala.App. 228, 182 So. 78.

■ There is no need for an extended discussion of the evidence. The absence of a motion to exclude the state's evidence, request for the affirmative charge or motion for a new trial precludes our consideration of the sufficiency of the evidence. Parker v. State, 37 Ala.App. 169, 65 So.2d 215; Madison v. State, 32 Ala.App. 617, 28 So.2d 927; Waldrop v. State, 41 Ala. App. 237, 130 So.2d 355.

■ A defense character witness, Williams, after testifying to defendant's good character, was asked on cross examination if he had heard defendant had been "involved in a burglary here." Defense Counsel objected and moved for a mistrial. The motion was overruled. The

witness answered, "No, sir." There was no error in the court's ruling. It is permissible on cross examination of defendant's character witness to ask if he has heard reports of specific bad conduct on the part of defendant. Moreover, defendant could not have been harmed by the negative answer of the witness. Driggers v. State, 36 Ala.App. 637, 61 So.2d 865.

■ A police officer testified he answered a complaint about a disturbance at the H & H Clothing Store and found defendant drunk, walking up the street. Henry Bond, defendant's brother, was brought out of the store by another officer. Henry Bond testified he and defendant went to two stores—"went to one store and up there to another store." Defense Counsel stated:

"Tell the jury what you did while you was there." The witness stated he was in a fitting room trying on pants when the officer came in and arrested him. On cross examination he was asked if he tried to divert the attention of the clerks, "so that your brother could steal * * *." This question was objected to, but a colloquy followed between the solicitor and defense counsel and no ruling was made and the question was not answered. The witness was then asked, "Q. Didn't you throw some clothes down on the floor in there?" Defendant's objection to this question was overruled on the ground the defendant had on direct examination gone into the matter of the actions of the witness while in the store. The witness denied he threw clothes on the floor, knocked clothes off the rack, saw clothes on the floor; had anything to do with getting clothes on the floor; had a fuss with the people in the store. He was then asked: "Fact of the matter is, didn't you urinate on the floor in that store?" Defense Counsel's objection was overruled. The witness answered, "No, sir." The court stated:

"Anything this young man did, and I so instruct you, is not material as to what he did."

The question was asked, "You tell this jury that that didn't happen?" The witness answered, "No, sir. It didn't." The court stated:

"I might also say he says it didn't happen so there is no proof before you that it did happen. Do you understand that, you gentlemen of the jury? The fact somebody asked a question doesn't mean a thing unless there is an answer. You, gentlemen, understand that? You all have good judgment and good sense or you wouldn't be in the jury box. A question that there is no answer to or the answer is 'No', is a big zero. You have to have an answer to a question before you can weigh anything up. You all understand that I'm sure."

The question was not harmful to defendant, in view of the negative answer of the witness and the court's instructions.

■ Insistence is made that the trial court erred in permitting Officer Weems to answer a question propounded to him by the district attorney as to what defendant said to Weems and what Weems said to defendant at the time Weems arrested him.

The brief reads:

"The conversation between Weems and appellant occurred after Weems had told appellant that he was under arrest for being drunk on the street. This conversation was not so connected with larceny as to be part of the res gestae."

The brief refers to transcript page 19.

The questions and answers on pages 19 and 20 are as follows:

"Q. What did you say to him while you were making the arrest?"

Defendant's objection was overruled.

"Q. Judge says you can tell what you said to him and what he said to you on the occasion of the arrest."

"A. I don't remember exactly.

**68**

"Q. The best you recall.

"A. I told him he was under arrest.

\* \* \* \* \* \*

"Q. Did you tell him what for?

"A. I don't know whether I told him what for or not right then.

"Q. Well, what was his condition as he appeared to you at that time?

"A. He was drunk.

\* \* \* \* \* \*

"Q. Was that what you arrested him for?

"A. Yes, sir."

These excerpts show the witness did not relate any conversation which took place between himself and the defendant.

■ As to the contention that this occurrence was not connected with the larceny charge, the witness testified he searched defendant for weapons and placed him in the back seat of the patrol car on the side next to the curb. He immediately "scooted" over to the opposite side next to the street. The officer noticed defendant had a fist full of bills and he told him to put the money in his pocket until they reached the police station. A few seconds later defendant opened the back door of the police car next to the street and threw something under the car. A red plastic billfold slid almost to the officer's feet, with the government check bearing the endorsement of Mrs. Mamie Payne and five twenty dollar bills inside it. The evidence tended to show the defendant had just left the store of Mrs. Payne, the owner of the billfold. The arrest of the defendant, although on a different charge, was made so soon after the commission of the larceny as to make his conduct a part of the res gestae. Tillson v. State, 248 Ala. 199, 27 So.2d 43.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.